**UNITED STATES of America,**

v.

**Gary HANEY, Larry Haney and Leon Frayer, Defendants.**

**Civ. Nos. LR–CR–91–236(4), LR–CR–91–236(5) and LR–CR–91–236(6).**

United States District Court,
E.D. Arkansas,
W.D.

July 13, 1992.

Charles Banks, U.S. Atty. by Kevin Alexander, Asst. U.S. Atty., Little Rock, Ark., for U.S.

Bobby McDaniel, and Randel Miller, Jonesboro, Ark., for Gary Haney.

Andrew Clark, Little Rock, Ark., for Larry Haney.

Sam Heuer, Little Rock, Ark., for Leon Frayer.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

### I.

Gary Haney, Larry Haney and Leon Frayer were charged with, pursuant to a superseding indictment, conspiracy to distribute and to possess with intent to distribute cocaine, a Scheduled II controlled substance (Count I) and to distribute and to possess with intent to distribute marijuana, a Scheduled I controlled substance (Count II), in violation of Title 21 U.S.C. §§ 841(a)(1) and 846. Leon Frayer was also charged with the offense of knowingly and intentionally making use of or carrying a firearm, a .22 caliber pistol, in relation to the drug conspiracy charges, in violation of Title 18, U.S.C. § 924(c)(1).

Following a two-week jury trial, Gary Haney was found guilty of all charges set forth in Counts I and II. Larry Haney and Leon Frayer were acquitted of the charges in Count I, but found guilty of the charges in Count II. Leon Frayer was also found guilty of the charges in Count III.

Immediately after the jury's verdict was published, the United States government requested the Court to detain defendants pending sentencing. The Court granted the government's request over the objection of defendants. However, on June 24,

1992, defendants were afforded the opportunity to offer evidence in support of their request that defendants be released pending sentencing. Specifically, defendants wanted to demonstrate the inapplicability or, in the alternative, that each defendant can meet, the relevant conditions set forth under Title 18, U.S.C. §.3143(a)(2)(A)(i) and (B) justifying their release pending sentencing.[1] Section 3143(a)(2)(A)(i) and (B) provides in material part:

(2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless—

(A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

.    .    .    .    .

(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.[2]

During the hearing, Mr. and Mrs. Hussman, friends and neighbors of Gary Haney, testified that they had known Gary over the years and did not believe that he would flee the jurisdiction of the Court or pose a danger in any way to the community; that they would accept the responsibility to supervise Gary pending sentencing and would submit both real and personal assets valued at approximately $300,000.00 to guarantee Gary's appearance. The Hussmans further testified that they were willing to execute the necessary documents granting a forfeiture of such assets if for any reason Gary failed to appear as directed.

Sue Turpin and Sam Turpin, sister and brother-in-law of Gary and Larry Haney,

testified that both Gary and Larry would be permitted, if released pending sentencing, to reside in their home at Jonesboro, Arkansas; and that they would make their home telephone facilities available in order to accommodate the Probation Department in monitoring the activities of both Gary and Larry through the department's electronic surveillance procedure pending sentencing. The Turpins also stated that they were willing to post all assets that are free and clear of any incumbrances as security for the appearance of both Gary and Larry with the understanding that if either failed to report, as required, that they would forfeit these assets.

Sam Turpin also testified that he supervises a group of professional house painters and that Larry Haney is part of this business venture; that the group has many contracts to be performed in several new housing projects currently under construction; that Larry's services are vital and essential in meeting these commitments.

Ward Frayer, son of defendant Leon Frayer, testified that Leon would be permitted to reside in his home pending sentencing, if released; that he and his wife would sign the necessary documents pledging between $25,000.00 and $30,000.00 worth of farm equipment and $39,000.00 worth of cattle and other farm animals to guarantee the appearance of their father for sentencing. Ward Frayer also testified that his home telephone facilities would be made available to facilitate the Probation Department's electronic surveillance procedure in determining the whereabouts of Leon pending sentencing. In addition, the former wife of Leon Frayer testified that she was willing to sign the necessary documents posting twenty-two (22) acres of farm land valued at $65,000.00 to guarantee the appearance of Leon for sentencing

---

**1.** Sentencing for Gary and Larry Haney has been scheduled for September 6, 1992. Leon Frayer is scheduled to be sentenced on September 7, 1992.

**2.** Subparagraph (A) (B) or (C) of subsection (f)(1) of § 3142 designates three offense categories which are:

"(A) a crime of violence;
(B) an offense for which the maximum term is life imprisonment or death;
(C) an offense for which a maximum term of imprisonment of ten years or more or is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq) . . ."

realizing that if Leon failed to appear that she would forfeit all of this property.

Alton Taylor, Probation Officer for the Eastern District of Arkansas and the person in charge of home detention and the electronic surveillance program for the Eastern District of Arkansas, testified that all three defendants have reported, as scheduled, for all pretrial hearings and conferences; that defendants have tested negative on all drug tests administered by the department; and that defendants have obeyed all conditions imposed by the department. Taylor further testified that the department had access to the necessary equipment to place defendants under the department's electronic monitoring program; that the department is in a position to obtain the assistance and cooperation of local and state law enforcement personnel in monitoring the activities of the defendants, if released, pending sentencing.

The defendants testified that they would not flee the jurisdiction of the Court nor pose a threat to any person or the community; that they would submit to and abide by all conditions and rules relating to the Probation Department's electronic surveillance procedure and will report as required for sentencing.

The Government did not offer any testimony in support of its position, but merely requested the Court to take notice of the evidence received during the course of the trial relating to the conduct and activities of these defendants, as well as other participants in the alleged conspiracy.[3]

After carefully considering the testimony presented by the defendants and witnesses called by the defendants and the Court, the Court announced, from the Bench, the following findings:

1. Defendants do not have a history or a record of engaging in any violent activities or conduct.

2. The defendants have reported as directed for all pre-trial hearings and have tested negative on all drug tests administered by the Probation Department.

3. The Court finds by clear and convincing evidence that defendants are not likely to flee or pose a danger to the safety of any other person or the community if released pending sentencing. Moreover, the Court has determined that there are conditions, including the Probation Department's electronic surveillance procedure, that could be invoked that would reasonably assure the appearance of the defendants and the safety of the respective communities involved.

## II.

The Court noted, in connection with the findings made from the Bench, that subparagraph (A)(i) of § 3143(a)(2) provides that "the judicial officer finds that there is a substantial likelihood that a motion for acquittal or a new trial will be granted" before releasing a defendant, pending sentencing, found guilty of an offense in a case described in subparagraph (A), (B) or (C) of subsection (f)(1) of Section 3142. The Court invited counsel to address the question whether paragraph (A)(i) of § 3143(a)(2) was either cast in the disjunctive or conjunctive when considering paragraph (B) of § 3143(a)(2) in determining whether a defendant should be released pending sentencing. In essence, whether defendants must also assume the burden of proof relative to sub-paragraph (A)(i) of § 3143(a)(2) even though the Court has found by clear and convincing evidence that defendants will not flee the jurisdiction of the Court and will not pose a risk to any person or the community pending sentencing.

Gary Haney contends that sub-paragraph (A)(i) of § 3143(a)(2) is not applicable to his case. First Gary, concedes that § 3143(a)(2) provides that if a person is convicted of an offense described in 18 U.S.C. § 3142(f)(1)(A), (B) or (C), that per-

---

**3.** Jerry L. Massey, a defendant, is currently incarcerated in a Mexican prison facility and, according to the evidence, played a major role in the alleged conspiracy to possess and distribute controlled substances in the United States by making use of telephonic facilities at the facility where he is confined. In addition, the government has not been successful in its efforts to extradite Massey who has lived in Mexico for the past six or seven years.

son must be detained pending sentencing unless that person satisfies the two conditions set forth in sub-paragraphs (A)(i) and (B) § 3143(a)(2); and that sub-paragraph (C) of § 3242(f)(1) which designates "a maximum term of imprisonment of 10 years or more as prescribed in the Controlled Substance Act (21 U.S.C. § 801 et seq.)" is the only offense applicable to Gary Haney. However, Gary will challenge vigorously any effort on the part of the government to make use of any quantity of drugs allegedly involved in the conspiracy to establish an offense level for sentencing purposes that imposes a term of imprisonment of 10 years or more. The sum and substance of Gary's argument is that it will not be until the sentencing phase before the Court will know for a fact whether the maximum term exceed 10 years, therefore, sub-paragraph (A)(i) of § 3143(a)(2) is inapplicable at this juncture of the proceedings. In the alternative, Gary argues that if applicable, the Court should find that there is a substantial likelihood that a motion for acquittal or a new trial will be granted. This assertion is based on the contention that Gary will raise numerous issues in a motion for acquittal or a new trial relating to rulings made by the Court during the course of the trial that could be decided either way and if the rulings are in his favor, this would result in the granting of a new trial or a dismissal of the indictment.

Larry Haney contends that he was convicted of the charge of conspiring to possess with intent to distribute an "unspecified" amount of marijuana; that during the course of the trial, the evidence "indicated that the alleged marijuana deal was originally to be for 300 pounds, but it wound up at 150 pounds;" that under the sentencing guidelines, the Court could find that Larry did not intend to produce or was not reasonably capable of producing the negotiated amount and, accordingly, the Court may exclude from the calculation the amount that it finds that Larry did not intend or was not capable of producing, thus resulting in a sentence, when considered in conjunction with other relevant mitigating factors permitted under the sentencing guidelines, "substantially less than the terms of

imprisonment facing other co-defendants" if not in fact "an offense level of 18, which would call for a minimum of 27 to a maximum of 33 months of incarceration" rendering sub-paragraph (A)(i) of § 3143(a)(2) inapplicable.

Leon Frayer argues that sub-paragraph (A)(i) of § 3143(a)(2) is inapplicable to his case also. Frayer contends that he was not involved in any offense involving more than 50 kilograms of controlled substances and, as such, he could not be imprisoned for a term of not more than five years. Leon cites Title 21, U.S.C. § 841(b)(1)(D) in support of his argument. At the very least, argues Frayer, it is impossible to determine at this point in the proceedings the "offense level that this Court will rely on in sentencing Leon on the conspiracy to distribute marijuana" and as such, he is not required to demonstrate that there is a substantial likelihood that he will prevail on a motion for acquittal or new trial in order to gain his release pending sentencing.

The Government argues that defendants, in order to gain their release pending sentencing, must assume the burden of meeting a "two-prong test" under Section 3143(a)(2). First, defendants must convince the Court that there is a substantial likelihood that defendants will prevail on a motion for acquittal or a motion for a new trial; and that the Court must find by clear and convincing evidence that defendants are not likely to flee or pose a danger to any person or the community.

The Government argues further that the proof offered during the course of the trial established that the marijuana negotiated in July, 1991, was for quantities up to 300 pounds at a price of $750.00 per pound; that co-conspirator Jerry L. Massey, even at a later date, offered to continue this transaction with United States Customs Service Special Agent Turner the following amounts: August 23, 1991, 220 pounds, August 30, 1991, 650 pounds and October 17, 1991, 300 pounds; that the conduct on the part of Massey was reasonably foreseeable when defendants met with Special Agent Turner in his undercover capacity, on July 2, 1991; and that all defendants

should be held accountable at the very least for these amounts of marijuana. The government further contends that Title 21, U.S.C. § 841(b)(1)(B)(vii) provides that the penalty for a quantity of marijuana in excess of 100 kilograms is a term of not less than five years, nor more than forty years imprisonment, thus, the condition of Title 18, U.S.C. § 3142(f)(1)(C) has been satisfied. In addition, relative to Gary Haney, the government contends that Gary Haney is also accountable for the cocaine involved in the conspiracy which exceeds 150 kilograms warranting a term of imprisonment of not less than 10 years nor more than life imprisonment. The government cites Title 21 U.S.C. § 841(b)(1)(A)(ii)(II) in support of its position.

Finally, the Government argues that defendants have failed to demonstrate that there is a substantial likelihood that they will succeed on a motion for acquittal or new trial and as such, defendants have failed to meet the burden of proof required in order to qualify for bail pending sentencing.

■ The Court is convinced that the government's argument to the effect that defendants' cases fall within the realm of § 3142(f)(1)(C) in that the offenses that defendants have been convicted of impose a term of imprisonment of ten years or more is correct; and the Court rejects defendants' contention that this provision is inapplicable because it cannot be determined with any degree of certainty, at this point in the proceedings, the base offense level applicable in each defendant's case under the sentencing guidelines. It is plain, as the government points out, that in the case of *United States v. Payne*, 940 F.2d 286, 292 (8th Cir.1991) under the guidelines the base offense level is determined by considering all acts that were part and parcel of the conspiracy including conduct that was reasonably foreseeable by the participants. Given this relatively broad standard, it appears appropriate to take into consideration the quantity of marijuana that co-conspirator Massey was negotiating to transfer which exceeded 1,400 pounds. Section 841(b)(1)(B)(vii) of Title 21 provides that the

penalty for a quantity of marijuana in excess of 100 kilograms is a term of imprisonment of not less than 5 years, not more than 40 years imprisonment.

■ Relative to Gary Haney, as the government alleges, Gary is also held accountable for the cocaine involved in the conspiracy. The evidence reflects that the quantity of cocaine actually delivered and negotiated for by co-conspirator Massey is in excess of 150 kilograms. Section 841(b)(1)(A)(ii) of Title 21 U.S.C. provides that violations in excess of 5 kilograms of cocaine are punishable by a term of imprisonment of not less than 10 years, nor more than life imprisonment.

In essence, the government argues that defendants have the burden of showing and the Court must find that there is a substantial likelihood that each defendant will prevail on a motion for acquittal or new trial before ordering the release of defendants pending sentencing separate and apart from finding that defendants are not likely to flee or pose a danger to any person or the community by clear and convincing evidence.

### III.

As the Court has already found by clear and convincing evidence that defendants, if released pending sentencing, are not likely to flee or pose a danger to any person or the community, the Court will dwell on the question whether defendants are required to demonstrate, or assume the burden of persuading the Court that there is a substantial likelihood that a motion for acquittal or new trial will be granted in order to fully comply with the requirements set forth in Title 18 U.S.C. § 3143(a)(2) before defendants may be released pending sentencing.

The force and effect of the Bail Reform Act of 1984, which is designated as Chapter I of the Comprehensive Crime Control Act of 1984, mandates, in the judgment of the Court, that a person who has been found guilty of an offense for which "a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substance Act (21 U.S.C. § 801 et seq.) ..." and

awaiting sentencing, shall be detained unless the judicial officer finds there is a substantial likelihood that a motion for acquittal or a new trial will be granted, and that by clear and convincing evidence the individual will not likely flee or pose a danger to any other person or the community. See: § 3143(a)(2) of Title 18 U.S.C.

The case law addressing the question the Court must resolve is, indeed, sparse. However, Circuit Judge Richard S. Arnold, now Chief Judge of the Court of Appeals for the Eighth Circuit, in *United States v. Powell*, 761 F.2d 1227, 1232 (8th Cir.1985) in addressing a question relating to a person's entitlement to bail pending appeal made the following persuasive observations regarding the impact of the Bail Reform Act of 1984:

Bail will be less frequent; it will be the exception, not the rule. That may not be wise policy. Certainly it is not what we are accustomed but it is the command of the sovereign, expressed by the people's elected representatives, and we are obliged to receive and apply it hospitably.

In addressing the second part of the statement for release pending appeal—(18 U.S.C. § 3143(b)(1)(B))—"likely to result in reversal or an order for a new trial", Judge Arnold, in speaking for the Court, observed:

We hold that a defendant who wishes to be released on bail after the imposition of a sentence including a term of imprisonment must first show that the question presented by the appeal is substantial, in the sense that it is a close question or one that could go either way....

█ The Court is of the view that the Court is required to make an analysis of the evidence currently in the record in order to determine if there is a "substantial likelihood" that a motion for acquittal or new trial be granted.

█ Relative to Larry Haney, the Court is of the view that Larry raises substantial questions regarding the sufficiency of the evidence to support the jury's verdict finding him guilty of conspiracy to distribute and to possess with intent to distribute marijuana. In other words, Larry's request for judgment of acquittal presents a close question likely to be resolved either way, if resolved in Larry's favor, the Court would have to vacate the jury's verdict of guilty and enter a judgment of acquittal and Larry would be a free person given the fact that he was acquitted of all charges in Count I. In making this finding, the Court notes that at the close of the government's case in chief, Larry moved for a judgment of acquittal. The Court took the motion under submission and stated for the record that Larry's case would be submitted to the jury and if a verdict of guilty was returned, the Court would reconsider the requested relief in connection with any post trial motions filed by Larry. The Court hastens to add, however, that this does not mean that the requested relief is guaranteed or warranted, but simply that a "close question" has been raised and that the Court will conduct a hearing to afford both Larry and the government an opportunity to address the concerns of the Court and then determine whether the motion is meritorious.

In an effort to apprise both the government and Larry of the concerns of the Court, the Court sets forth the following:

In the judgment of this Court, the evidence reflects that Larry Haney played a minor role in the charges set forth in Count II. In addition, the evidence tends to reflect that Larry may have been a victim of circumstances, if not during the whole time frame in which he was allegedly involved in the conspiracy, indeed, at the very least during the initial phase of his involvement. For example, the evidence discloses that Larry and a lady friend had scheduled a trip to Little Rock, Arkansas, from Pocahontas, Arkansas, for July 2, 1991, to take an examination in order to obtain a license in order to establish a bonding business at Pocahontas. Gary Haney, Larry's brother, who had direct contact with Jerry L. Massey, had promised Massey that he (Gary) would make a trip to Jacksonville, Arkansas, just north of Little Rock, in order to communicate with Customs Agent Turner who was negotiating with Massey, in an undercover capacity, for the purchase of drugs and deliver an envelope to Agent

Turner that contained money. However, Gary, being aware of Larry's scheduled trip to Little Rock, requested Larry to carry out the assignment instead. Gary communicated this to Massey. The evidence does not reflect that Larry was knowledgeable of the contents in the envelope or that he was aware of the negotiations between Massey, Agent Turner and Gary. Moreover, the evidence seems to indicate that Larry has never communicated with Massey or that Massey actually knows Larry or had any direct dealing with Larry. Nor does the evidence reflect that Larry has invested any personal funds whatsoever in the venture as the evidence reflects that Gary and Leon have in a substantial degree. The essence of the Court's concern is whether Larry is a victim of circumstances.

Relative to Gary Haney and Leon Frayer, the Court is not persuaded that there is a substantial likelihood that either will prevail on a post-trial motion for acquittal or new trial and their request for release pending sentencing is denied.

Accordingly, it is ordered:

A. Larry Haney is hereby released, pending sentencing, upon the following conditions:

1. Mr. and Mrs. Sam Turpin must agree to assume supervision of Larry and agree to permit Larry to reside in their home. The Turpins must agree to make their telephone facilities available in order to facilitate the Probation Department's electronic surveillance procedure operable in monitoring the whereabouts of Larry Haney since Larry will be required to participate in the procedure pending sentencing.

2. Mr. and Mrs. Turpin must execute the necessary documents pledging all assets that they currently possess which are free and clear of all incumbrances with the understanding that in the event Larry fails to appear at the scheduled sentencing, they will forfeit the assets pledged.

3. Larry will be permitted to leave the home of the Turpins for employment purposes only, pursuant to a schedule set by the Probation Department. In the event Larry desires to obtain medical treatment or assistance, he should seek the permission from the Probation Department promptly.

4. The Probation Department is authorized and directed to impose whatever conditions and seek whatever assistance it deems essential in perfecting its electronic monitoring procedure and assuring the presence of Larry for sentencing.

B. The request of Gary Haney and Leon Frayer for release pending sentencing is denied.

IT IS SO ORDERED.