NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0256n.06

Case No. 24-3095

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | May 19, 2025 |
|  | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| ERIC KING, | ) | COURT FOR THE NORTHERN |
|  | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) |  |
|  | ) | O P I N I O N |

Before: COLE, WHITE, and MATHIS, Circuit Judges.

COLE, Circuit Judge. Eric King was a mental-health specialist who used falsified patient progress notes to bill Medicaid for services he never rendered. A jury convicted King on multiple counts of health-care fraud, making false statements relating to health-care matters, and aggravated identity theft. After he was indicted—but before his trial began—the Supreme Court clarified the conduct criminalized under the federal aggravated-identity-theft statute, 18 U.S.C. § 1028A. King appeals only his convictions for aggravated identity theft. We affirm King's convictions.

I.

This case arises from an investigation into Medicaid fraud. The Ohio Department of Medicaid contracts with care organizations, who then contract with behavioral health services to provide care for patients. Two such behavioral health services were Eye for Change Youth and Family Services and Life Enhancement Services.

Law enforcement began investigating Eye for Change after receiving allegations from its clients and employees that it had billed for services not rendered. By the time it shut down, Eye

for Change had billed over $32 million to Medicaid. Law enforcement reviewed mental-health specialists' progress notes, which reflect the services they rendered to clients and are submitted to receive their hourly fee, and confirmed that many notes reflected services that had not been provided. Investigators then focused on the 40 mental-health specialists at Eye for Change who had billed the most.

One of those top billers was Eric King. King was a qualified mental-health specialist in Cleveland, Ohio, providing counseling services to Medicaid-eligible clients on behalf of Eye for Change and then for Life Enhancement Services. To bill Medicaid, King—through his employers—had to identify the recipient of his services, as well as the length of the services rendered. As a specialist for these organizations, King was responsible for creating progress notes that the organizations relied on to bill Medicaid.

But King's clients did not always receive the services he purported to provide. For example, one client never received a mood assessment, spoke with King about depression, or received transportation to the bank, despite his progress notes reflecting such services. Nor did she meet with King for the 90-minute sessions he recorded. And another client did not meet with King over 170 times from July 2018 to June 2020, despite King's progress notes stating that those sessions occurred. King used the clients' names and Medicaid identification numbers in notes and billing documents. During one of the purported at-home sessions for which King billed Medicaid, a client was in the hospital giving birth.

A grand jury charged King and several other defendants with conspiracy to commit health-care fraud, committing health-care fraud, and making false statements relating to health-care matters. Thereafter, a grand jury returned a supplemental indictment charging King with several additional counts of health-care fraud, as well as multiple counts of aggravated identity theft.

Regarding the aggravated-identity-theft-counts, King was charged with knowingly and unlawfully transferring, possessing, and using other persons' names and Medicaid identification numbers in notes and billing documents. Prior to trial, the government filed an amended indictment, which consolidated the superseding and supplemental indictments into a streamlined document for the parties and jury.

King pleaded not guilty and went to trial. The district court preliminarily instructed the jury that, to convict King for aggravated identity theft, the government had to prove beyond a reasonable doubt that King committed health-care fraud; that King knowingly transferred, possessed, or used another person's identity without lawful authority; that King knew the identity belonged to another person; and that the transfer, possession, or use was during and in relation to the health-care fraud. The district court's closing instructions more thoroughly explained the elements of aggravated identity theft:

> The term "use" means active employment of the means of identification during and in relation to the crimes charged in Counts 1 through 24. Active employment includes activities such as displaying or bartering. Use also includes a person's reference to a means of [identification] in his possession for the purpose of helping to commit the crime charged in Counts 1 through 24.
>
> [. . .]
>
> The term "during and in relation to" requires that the means of identification have some purpose or effect with respect to the felony of conspiracy to commit healthcare fraud charged in Count 1or healthcare fraud charged in Counts 2 through 22 or false statements relating to healthcare matters charged in Counts 23 and 24.
>
> In other the words, the means of identification must be the crux of the facilitation or furtherance of the felony of conspiracy to commit healthcare fraud charged in Count 1 or healthcare fraud charged in Counts 2 through 22 or false statements relating to healthcare matters charged in Counts 23 and 24, and the presence or involvement of the means of identification cannot be merely ancillary.

(Trial Tr., R. 817, PageID 6569–71.)

At the conclusion of trial, the jury convicted King on thirteen counts of health-care fraud, one count of false statement, and five counts of aggravated identity theft. The jury returned not guilty verdicts for conspiracy to commit health-care fraud, eight counts of health-care fraud, one count of making false statements, and one count of aggravated identity theft.

King timely appealed his convictions for aggravated identity theft.

## II.

After King was indicted—but before he went to trial—the Supreme Court clarified the scope of aggravated identity theft as defined under 18 U.S.C. § 1028A. *See Dubin v. United States*, 599 U.S. 110 (2023). In *Dubin*, the Supreme Court held that to "use" another's identity in violation of federal law, the use must be "at the crux of what makes the conduct criminal." *Id.* at 131. This "requires more than a causal relationship, such as facilitation of the offense or being a but-for cause of its success." *Id.* (internal quotation marks and citation omitted). *Dubin*, however, did not change our circuit's law. *United States v. O'Lear*, 90 F.4th 519, 533 (6th Cir. 2024).

King raises four issues on appeal. He argues that, after *Dubin* was decided, the district court erred by not dismissing his indictment *sua sponte*, by providing incorrect jury instructions, and by allowing the government to constructively amend indictment. Finally, he argues that his trial counsel was constitutionally ineffective. We first address King's three *Dubin*-based arguments and then address his ineffective assistance of counsel claim.

## A.

Shortly after filing his brief, King moved for release from prison pending his appeal. He argued that his appeal raised a substantial question of law or fact that would result in a new trial or shorter sentence. His motion mirrored his first three arguments on appeal—that the indictment

lacked the requisite elements of the offense, the district court constructively amended the indictment, and the district court improperly instructed the jury.

This court addressed King's arguments and rejected them for failing to raise a substantial issue of law or fact. *United States v. King*, 126 F.4th 440, 442–45 (6th Cir. 2025) (order). A substantial question on appeal raises a "close question or one that could go either way." *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (quoting *United States v. Powell*, 761 F.2d 1227, 1233–34 (8th Cir. 1985)). We reasoned that King's charges were consistent with *Dubin*, that the jury instructions did not amount to plain error, and that his indictment was not constructively amended by the evidence or instructions at trial. *King*, 126 F.4th at 443–45. For the same reasons discussed therein, we reject King's arguments that *Dubin* created a windfall of reversible errors in his trial.

B.

King argues that his trial counsel was ineffective for failing to object to the district court's jury instructions on aggravated identity theft. To demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, King must show that his counsel's performance "fell below an objective standard of reasonableness" and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).

Because we reject the arguments King raises regarding *Dubin*'s effect on the district court's jury instructions, we conclude that King's trial counsel was not constitutionally ineffective. It was not objectively unreasonable for King's trial counsel not to object to the trial court's jury instructions where such instructions appropriately captured the law. And because we reject the

merits of the arguments King asserts his counsel should have raised, there is no reasonable probability that the outcome of his trial would have differed.  *See id.* at 694.

III.

For the foregoing reasons, we affirm King's convictions.  We deny King's motions to file supplemental briefs and the government's motion to strike King's pro se supplemental brief as moot.