The judgment of the district court is, accordingly, AFFIRMED.

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Sharon POLLARD,**
**Defendant-Appellant.**

**No. 84–5976.**

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 23, 1985.

Decided Dec. 10, 1985.

Charles P. Dupree, Chattanooga, Tenn., Court Appointed, for defendant-appellant.

John W. Gill, Jr., U.S. Atty., Chattanooga, Tenn., John MacCoon, Asst. U.S. Atty., William Sonnenburg, for plaintiff-appellee.

Before ENGEL and KENNEDY, Circuit Judges, and COOK,* District Judge.

---

* Honorable Julian Abele Cook, Jr., United States District Court for the Eastern District of Michigan, sitting by designation.

CORNELIA G. KENNEDY, Circuit Judge.

Defendant, Sharon Pollard, appeals from her convictions under 7 U.S.C. § 2024(b)[1] for two counts of unlawfully purchasing food stamps. During the 1981–82 winter, the Department of Agriculture and local law enforcement officials conducted a joint undercover investigation to curtail the illegal trafficking of food stamps in the Chattanooga, Tennessee area. As part of the investigation, undercover agents offered known dealers a ten percent commission for introductory sales that the dealers arranged to new customers. Under this arrangement, Thad Lewis, a known dealer, introduced two undercover agents, Special Agent Billy Brown of the Inspector General's Office, United States Department of Agriculture, and Officer Eddie Cooper of the Chattanooga Police Department, to defendant.

On February 3, 1982, Lewis arranged a transaction in which defendant purchased $1,000 in food stamps for $500 from Brown in Lewis' apartment. During the transaction, defendant made arrangements to buy more food stamps the following day. The next day, February 4, 1982, the agents sold defendant $850 worth of food stamps for $425. This sale also occurred in Lewis' apartment. Again defendant made arrangements for another purchase that would occur that evening. When defendant was not in the building when the agents arrived, the agents left the stamps with Lewis, as defendant had instructed the agents to do if she was not there. On February 5, 1982, defendant called Special Agent Brown to ask for a ten percent commission if she purchased food stamps for other people. Defendant requested a commission on all sales to her and not merely on introductory sales to new customers. Brown recorded the telephone conversation. Defendant indicated that she had a line of customers ready to buy.

After Special Agent Brown refused defendant's request for a blanket ten percent bonus, defendant called Officer Cooper to make the same request. Cooper also recorded the phone conversation.

Defendant filed a motion in limine objecting to the admission of the tape recordings that took place on February 5, 1982. The District Court, over defendant's continuing objection, ruled that the conversations were admissible under Fed.R.Evid. 404(b) as evidence of defendant's state of mind during the charged offenses of February 3 and 4, 1982. After the government's case in chief, and again after her defense, defendant moved for a directed verdict arguing that the prosecution had failed to prove that defendant made the purchases knowing that she was violating a law or regulation. The District Court denied both motions. The jury returned guilty verdicts on both counts. The District Court denied defendant's motion for a new trial and sentenced defendant to one year on the first count and two years probation on the second count, assessed a $500 fine on each count, and ordered $925 restitution. At sentencing, the government acknowledged that defendant was pregnant and was expecting a baby on approximately January 25, 1985 and requested that defendant remain on bond until four months after delivery. The District Court ordered defendant to remain on bond until May 24, 1985. Upon the prosecution's motion and under the Bail Reform Act of 1984, 18 U.S.C. § 3143, the District Court denied bail pending appeal concluding that defendant's appeal did not raise a substantial question of law. This Court later denied defendant's motion for a stay of judgment pending appeal and defendant's motion for reconsideration.

Defendant raises three issues on appeal: (1) Whether the District Court erred in admitting into evidence tape recordings of

---

**1.** Title 7 U.S.C. § 2024(b) provides in pertinent part:

(1) ... whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authoriz-

ed by this chapter or the regulations issued pursuant to this chapter shall, if such coupons or authorization cards are of a value of $100 or more, be guilty of a felony....

conversations about subsequent activity pursuant to Fed.R.Evid. 404(b); (2) Whether the District Court erred in denying defendant's motion for a directed verdict because the prosecution failed to prove that defendant knew her acts were illegal at the time she committed them; and (3) Whether the Bail Reform Act of 1984, 18 U.S.C. § 3143(b)(2), unconstitutionally violates the due process clause. For the reasons set forth below, we affirm defendant's convictions.

## I.

Defendant argues that the District Court improperly admitted tape recorded conversations of telephone conversations that occurred on February 5, 1982 between defendant and Special Agent Brown and defendant and Officer Cooper. The District Court ruled that the evidence was admissible under Fed.R.Evid. 404(b)[2] as evidence of defendant's intent, knowledge, or state of mind. Defendant contends that Fed.R. Evid. 403[3] required exclusion of the evidence because the prejudicial effects far outweighed any probative value.

■ In *United States v. Holloway*, 740 F.2d 1373, 1377 (6th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984), this Court summarized the law regarding the admissibility of evidence under Fed.R.Evid. 404(b). If evidence falls within one of the exceptions of 404(b), a district court may admit the evidence if the evidence's probative value outweighs its prejudicial impact. This Court reviews a district judge's balancing of prejudicial impact and probative value under Fed.R.Evid. 403 in a Fed.R.Evid. 404(b) context under an abuse of discretion standard. *Id.* In reviewing a district court's ruling on a Fed.R.

Evid. 403 objection, this Court "look[s] at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Id.* at 1378, citing *United States v. Brady*, 595 F.2d 359, 361 (6th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979). Furthermore, a district court should exclude evidence under Fed.R.Evid. 403 "only where the probative value of the relevant evidence is *substantially* outweighed by the danger of unfair prejudice." *United States v. Hans*, 684 F.2d 343, 346 (6th Cir.1982) (emphasis in original).

In *Liparota v. United States*, —— U.S. ——, 105 S.Ct. 2084, 2092, 85 L.Ed.2d 434 (1985) (footnote omitted), the Supreme Court held that "in a prosecution for violation of § 2024(b), the Government must prove that the defendant knew that his acquisition or possession of food stamps was in a manner unauthorized by statute or regulations." *See also United States v. Pollard*, 724 F.2d 1438, 1439 (6th Cir.1984) (District Court erred in failing to give requested instruction that the jury could convict defendant only upon a finding that she knew that her acquisition of food stamps was illegal). Consequently, the issue of defendant's intent or knowledge was central to the case. Accordingly, the government sought to introduce tape recordings of two phone conversations which defendant had with undercover agents the day after the last charged transaction. In *United States v. Lambinus*, 747 F.2d 592, 597 (10th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985), another food stamp case, the Tenth Circuit held that the district court did not abuse its discretion in admitting the tape and transcript of a phone conversation that oc-

---

**2.** Fed.R.Evid. 404(b) provides:

    **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**3.** Fed.R.Evid. 403 provides:

    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

curred between appellant and an undercover agent as evidence of appellant's intent and knowledge of the illegal nature of his acts. In this case, the government argues that the tapes were highly probative of defendant's knowledge or intent regarding the charged offenses. Special Agent Brown and Officer Cooper both testified that in the conversations defendant pressed for a blanket ten percent commission on all sales to her. The District Court's limiting instruction greatly reduced the prejudicial impact of the evidence. We hold that the District Court did not abuse its discretion in admitting into evidence the February 5, 1982 taped conversations. While not unduly prejudicial, the tapes were probative of defendant's knowledge or intent.

## II.

■ At the conclusion of the prosecution's case in chief and again at the conclusion of her defense, defendant moved for directed verdicts. Such motions, technically motions for judgment of acquittal under Fed.R.Crim.P. 29, "raise[ ] the question of whether the evidence is sufficient to support a verdict." *United States v. Cox*, 593 F.2d 46, 48 (6th Cir.1979). Defendant argues that the District Court erred in failing to direct a verdict of acquittal for defendant because the government failed to prove that she knew her actions were illegal. When reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 *reh'g denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979) (emphasis in original). *See also United States v. Strong*, 702 F.2d 97, 99 (6th Cir.1983). This standard applies regardless whether direct or circumstantial evidence supports the conviction. *United States v. Meyers*, 646 F.2d 1142, 1143 (6th Cir.1981). In addition, this Court must draw reasonable inferences from the evidence in the govern-

ment's favor. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789. *See also United States v. Stull*, 743 F.2d 439, 442 (6th Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 1779, 84 L.Ed.2d 838, *reh'g denied*, — U.S. ——, 105 ·S.Ct. 2351, 85 L.Ed.2d 866 (1985).

In *Liparota v. United States, supra,* the Supreme Court held that the prosecution must prove that the defendant in a § 2024(b) case knew that his conduct violated a statute or regulation. The Court observed that "the Government need not show that [a defendant] had knowledge of specific regulations governing food stamp acquisition or possession." *Id.* at 2092. Rather, "the Government may prove by reference to facts and circumstances surrounding the case that [the defendant] knew that his conduct was unauthorized or illegal." *Id.* at 2092–93 (footnote omitted).

The District Court instructed the jury that "the government need not prove that [the defendant] knew what particular law or regulation she was violating, but rather it need only show that she knew she was violating some law or regulation." We hold that, from the evidence introduced at trial, a reasonably-minded jury could have found the evidence sufficient to support a guilty verdict, especially when evaluating the evidence in the light most favorable to the government and drawing every reasonable inference in the government's favor. Defendant purchased relatively large amounts of food stamps at a fifty percent discount from their face value. Special Agent Brown testified that defendant carefully examined the food stamps and counted them. The government introduced evidence that each food stamp contains a notice: "[N]ontransferable except under conditions prescribed by the Secretary of Agriculture." The government also introduced evidence that each book of food stamps contains, printed on the inside of the back cover, the following warning:

Warning: Persons illegally using food stamps or authorization cards, ATP'S, may be found guilty of a felony and may

be fined and/or imprisoned. Penalties are severe.

Special Agent Brown testified that defendant referred to food stamps as "the hottest thing going, it's better than dope." The two phone calls that occurred after the last transaction also indicated that defendant knew that buying food stamps was illegal.

Defendant testified that she purchased the food stamps for Lewis, using his money, and that she did not know that the purchases were illegal. Defendant admitted she counted the food stamp books but testified that she did not see any warnings that illegally using, transferring, acquiring, altering, or possessing food stamps was a crime. On cross-examination, however, defendant admitted that she knew that the government had eligibility requirements governing who can legally have food stamps and that she did not meet those requirements. Finally, on rebuttal, Lewis testified that defendant did not purchase the food stamps for him. We hold sufficient evidence supports defendant's convictions.

## III.

Defendant contends that the Bail Reform Act of 1984, 18 U.S.C. § 3143(b)(2),[4] which the government invoked to deny defendant bail pending appeal, unconstitutionally deprived defendant procedural due process. Title 18 U.S.C. § 3143(b) requires a district court to make two findings before granting bail pending appeal. First, a district court must find that the convicted person will not flee or pose a danger to the community if the court grants bail. Second, the district court must find that "the appeal is not for purpose of delay and raises a substantial

question of law or fact likely to result in reversal or an order for a new trial." The District Court denied bail pending appeal solely on the ground that the appeal did not raise a substantial question.

Defendant contends that 18 U.S.C. § 3143(b)(2)'s requirement that she convince the District Court that it made an error likely to result in reversal or a new trial represented an exercise in futility because she was in effect asking the District Court to rule on the District Court's own ruling and because the District Court had already overruled defendant's motion for a new trial. Defendant weakly compares the statutory requirement under the Bail Reform Act of 1984 to the statutory scheme in *Connally v. Georgia*, 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977), where Georgia paid a justice of the peace, who was not salaried, a prescribed fee for every search warrant that the justice of the peace issued but nothing when the justice of the peace denied a warrant. The Supreme Court invalidated the search warrant in the case because the justice of the peace had a "direct, personal, substantial, pecuniary interest" in his decision to issue or deny the warrant. That case, however, involved a pecuniary interest. Defendant argues that judicial pride can lead to the same temptations present in *Connally* and that she did not receive a hearing before an impartial judicial officer.

We reject defendant's argument. Although this Court has not yet had occasion to interpret the language of 18 U.S.C. § 3143(b)(2), the appellate courts which have interpreted 18 U.S.C. § 3143(b)(2) have all concluded that the statute does not require the district court to find that it

---

**4.** Title 18 U.S.C. § 3143(b) provides:

**(b) Release or detention pending appeal by the defendant.**—The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

(1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or

the community if released pursuant to section 3142(b) or (c); and

(2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

If the judicial officer makes such findings, he shall order the release of the person in accordance with the provisions of section 3142(b) or (c).

committed reversible error. *See, e.g.,* *United States v. Miller,* 753 F.2d 19 (3d Cir.1985); *United States v. Giancola,* 754 F.2d 898 (11th Cir.1985); *United States v. Molt,* 758 F.2d 1198 (7th Cir.1985); *United States v. Randell,* 761 F.2d 122 (2d Cir. 1985); *United States v. Valera-Elizondo,* 761 F.2d 1020 (5th Cir.1985); *United States v. Powell,* 761 F.2d 1227 (8th Cir.1985) (en banc); *United States v. Handy,* 761 F.2d 1279 (9th Cir.1985); and *United States v. Affleck,* 765 F.2d 944 (10th Cir.1985) (en banc).

In *United States v. Miller, supra,* the First Circuit was the first court of appeals to interpret the language in the Bail Reform Act of 1984. The Eleventh Circuit improved upon the *Miller* court's interpretation in *United States v. Giancola, supra.* The Second, Fifth, Seventh, Eighth, and Tenth Circuits have all followed *Giancola.* After considering the legislative history of the Bail Reform Act of 1984, we adopt the further refinement that the Eighth Circuit, sitting en banc, espoused in *United States v. Powell, supra.* In *Powell,* the Eighth Circuit concluded that an appeal raises a substantial question when the appeal presents a "close question or one that could go either way" and that the question "is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Id.* at 1233–34. After interpreting the statute, the court held that 18 U.S.C. § 3143(b), as amended by the Bail Reform Act of 1984, is constitutional. The court specifically rejected due process, excessive bail, and ex post facto clause challenges. *Id.* at 1234–35.

As an additional observation, policy considerations support the statutory scheme. Since the district court is familiar with the case, the district court is in an excellent position to determine in the first instance whether the defendant raises a substantial question on appeal. Although the district court makes the initial determination, this Court may review, on appeal, an order denying bail pending appeal. Furthermore, since the issue whether an appeal raises a substantial question presents an issue of law, this Court reviews the question de novo. The Federal Rules of Appellate Procedure use a similar scheme in other contexts. For example, Fed.R.App.P. 8(a) requires that a party apply in the first instance to the district court for a stay or injunction pending appeal. Consequently, we hold that the Bail Reform Act of 1984 does not violate a defendant's procedural due process rights by requiring the district court to determine that an appeal raises a substantial issue before granting bond pending appeal.

Accordingly, defendant's convictions are affirmed.