798 F.2d 471
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Jerry L. WORD, Defendant-Appellee.
 No. 86-5209.
 United States Court of Appeals,
Sixth Circuit.
 June 3, 1986.
 
 Before KEITH, KRUPANSKY and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The government appeals the district court's order releasing defendant on a $100,000.00 surety bond pending appeal of his criminal conviction. For the reasons given below, we reverse.
 
 I.
 
 2
 On November 13, 1995, defendant, Jerry L. Word, a licensed physician, was indicted on 46 counts of violating the drug laws of the United States. The defendant was charged with conspiracy to distribute controlled substances, distribution of controlled substances for other than a legitimate medical purpose, and attempted distribution of controlled substances for other than a legitimate medical purpose. The gravamen of the indictment and the government's proofs was that the defendant was selling prescriptions for Dilaudid, a controlled substance, for large sums of money, and that such was done for other than a legitimate medical purpose in the usual course of professional practice, as defined in 21 C.F.R. Sec. 1306.04(a). Following a jury trial, defendant was convicted of 45 of the 46 counts of the indictment. He was thereafter sentenced on January 16, 1986, to a total term of 25 years incarceration to be followed by a three-year special parole term.
 
 
 3
 Three days prior to the defendant's sentencing, the government requested that defendant's bond be revoked. After sentencing the defendant, the district judge took up the question of whether defendant should be released on bond pending appeal. Following oral argument by defense counsel, the court ordered the defendant's release on a $100,000.00 surety bond. The government filed a motion for reconsideration, which was denied by the court, and the defendant thereafter posted an appearance bond in the amount of $100,000.00. The government then filed a timely notice of appeal from the district court's decision.
 
 II.
 
 4
 The pertinent statute at issue here is the Bail Reform Act of 1984. 18 U.S.C. Sec. 3143(b) provides as follows:
 
 
 5
 (b) Release or detention pending appeal by the defendant.--The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--
 
 
 6
 (1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released pursuant to section 3142(b) or (c); and
 
 
 7
 (2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.
 
 
 8
 If the judicial officer makes such findings, he shall order the release of the person in accordance with the provisions of section 3142(a) or (c).
 
 
 9
 In United States v. Pollard, 778 F.2d 1177 (6th Cir. 1985), this court discussed the provisions of 18 U.S.C. Sec. 3143(b)(2). This court found that a district court had to make two findings to justify releasing a defendant on bond pending appeal: (1) that the convicted person would not flee or pose a danger to the community if the court granted bail; and (2) that the appeal was not for the purpose of delay and raised a substantial question of law or fact likely to result in reversal or an order for a new trial. This court also discussed what constituted a substantial question, and adopted the definition of substantial question set forth by the Eighth Circuit in United States v. Powell, 761 F.2d 1227 (8th Cir. 1985). In Powell, the Eighth Circuit held that an appeal raises a substantial question when the appeal presents a "close question or one that can go either way," and that the question is "so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." Powell, 761 F.2d at 1233-34; Pollard, 778 F.2d at 1182.
 
 
 10
 At sentencing the district court below overruled defendant's motion for a new trial by stating: "Once again, I've never seen a case where the evidence was more overwhelming that went to trial. This man was proved guilty beyond any question of a doubt, much less reasonable doubt in this court's mind and obviously, in the mind of the jury." (App. at 225.) After sentencing, the court then turned to the question of release on bond pending appeal and stated that it must consider the two requirements of 18 U.S.C. Sec. 3143(b). The judge first found that the defendant was not likely to flee or pose a danger or safety hazard to anyone in the community if released. The government does not challenge that finding on appeal. The judge then found that there was "no way" he could make the finding that the appeal was not for the purpose of delay and raised a substantial question of law or fact likely to result in reversal or order for a new trial. The judge went on to state, "This man was convicted on the most clear and most convincing evidence and I see absolutely nothing in your motion for a new trial or in the proceedings that have been had before me that would in any way authorize or would likely result in a reversal or order for a new trial." (App . at 226.)
 
 
 11
 Defense counsel then asserted that the Sixth Circuit had not specifically defined "the usual course of professional practice." Defense counsel contended that there was no proof introduced from which a jury could have concluded that the conduct of the defen dant was not in the usual course of professional practice, The court queried: "Would not the jury have had the option under this proof, Mr. Quillen, to have made the determination that this was not for a legitimate medical purpose without expert testimony in that regard? I assume you're insisting that the government should have brought a doctor in here saying it is not for a legitimate medical purpose to prescribe dilaudid for someone you've never seen." (App. at 229.) The judge then reviewed the evidence that had been presented and concluded, "Mr. Quillen, as far as I'm concerned, this record is so clear that there is absolutely no way --this court would stultify itself to certify at this point that there is grounds for reversal of this case. It may be reversed, but I could not in any kind of conscience say it could." (App. at 230.) Defense counsel responded that he was presenting a "legitimate novel issue that hasn't been decided." The court then simply stated, "Well, Mr. Quillen, I'm going to give you the benefit of the doubt on the question of whether or not they should have presented proof of a doctor's--an expert. I'll admit him to $100,000 surety bond pending appeal." (App. at 231.)
 
 
 12
 The question before us is whether or not defendant has raised a substantial question on appeal of his conviction, such that he satisfies the requirements of 18 U.S.C. Sec. 3143(b). Defendant asserts that the government must put on expert testimony as to whether his actions were in the usual course of medi cal practice for a legitimate medical purpose. We find that that question is not a close one or one that can go either way. The fact that the Sixth Circuit has not ruled on this question is not controlling. Three other circuits have ruled on the question and have clearly found that expert testimony is not required on this issue in a case such as the present one. There is no reason to believe, in our opinion, that this court will depart from this now well-established holding.
 
 
 13
 In United States v. Rogers, 609 F.2d 834, 839 (5th Cir.1980), the Fifth Circuit found:
 
 
 14
 In order for the Government to convict the appellant of counts 3, 5 and 8, it was necessary that it prove that the appellant dispensed the Valium, that he did so knowingly and willingly, and that the appellant in prescribing the Valium was acting other than for a legitimate medical purpose and in the usual course of his medical practice. To prove this, the Government does not have to present proof through the use of expert testimony. United States v. Rosen, 582 F.2d 1032 (5th Cir.1978); United States v. Bartee, 479 F.2d 484 (10th Cir.1973), United States v. Larson, 507 F.2d 385 (9th Cir.1974). In particular, see note 10 on page 1037 of Rosen, supra.
 
 
 15
 While the use of expert testimony is both permissible and useful, it is not absolutely necessary as a jury can find that a doctor prescribed controlled substances not in the usual course of his medical practice and was acting other than for a legitimate medical purpose from evidence received from lay witnesses surrounding the facts and circumstances of the prescriptions. United States v. Bartee, supra, at 488.
 
 
 16
 The Tenth Circuit also relied upon the Bartee and Larson cases in United States v. Smurthwaite, 590 F.2d 889, 892 (10th Cir. 1979). In that case the defendant had argued that the government's expert was not familiar with defendant's practice so his testimony was insufficient to show the usual course of practice for this particular kind of specialist. The court found that it need not decide that issue because expert testimony was not essential to support a conviction.
 
 
 17
 We can conceive of situations where evidence as to the usual practice might be essential to proof of the government's case. But here there is evidence of conduct clearly outside the usual course of any professional practice. There is direct testimony that the defendant stated that he knew the purchasers intended to use the pills at parties; that fees were charged in accordance with the number of prescriptions written rather than on an office call basis; that prescriptions were given for absent purported wives under circumstances where there was no discussion of the wife's need but only of the fact that the purported husband had not yet completed his 30-day wait since the last prescription, the time lapse necessary to have one issued in his name. Here no medical history or examination was taken, except an estimated weight was put on a card by the doctor without even asking the individual. There were conflicts, of course, between the doctor's testimony and the witnesses', but the resolution of those conflicts was for the jury. We hold there is ample evidence in the record to support the jury verdict.
 
 
 18
 In United States v. Larson, 507 F.2d 385, 387 (9th Cir.1974), the Ninth Circuit held that expert testimony was not required in a case with facts such as those before it. The court stated that it was following United States v. Bartee, 479 F.2d 484 (10th Cir. 1973), and found many of the factual factors considered significant in Bartee present in Larson. Lay testimony showed that Larson prescribed and or distributed inordinate quantities of drugs, that he wrote more than one prescription in order to spread them out, that he charged a flat rate cash fee for each prescription, that he was familiar with street parlance for these drugs, etc.
 
 
 19
 In Bartee, the seminal case on this question, the defendant and the government presented conflicting testimony by doctors as to legitimate medical purpose and the usual course of professional practice. The court found:
 
 
 20
 Expert testimony from medical practitioners is of course admissible as bearing on the issue as to whether a doctor in prescribing a controlled substance is acting for a legitimate medical purpose, and the expert testimony in the instant case was to some degree, at least, in conflict. However, the jury is not bound by such expert testimony and may of course consider all of the facts and circumstances surrounding the prescribing as related by lay witnesses.
 
 
 21
 Bartee, 479 F.2d at 488.
 
 
 22
 What the above cases hold is that while expert testimony as to "legitimate medical purpose" and "in the usual course of professional practice" may be helpful to a jury, there are cases in which the lay testimony is so clear that no expert testimony is required to determine that the defendant's actions were not for a legitimate medical purpose nor in the usual course of professional practice. We find the present appeal to present such a case. The lay testimony clearly established that defendant prescribed great quantities of Dilaudid for large sums of money and that he dispensed these drugs at various different locations, In his own testimony defendant admitted, and does not now dispute, that he wrote prescriptions for various individuals whom he did not examine, upon other individuals' representations that that person needed the drugs. There was even testimony from a party to whom he sold pills that that party told defendant he was selling some of the pills. We must agree with the government that in no way can it be considered to be a legitimate medical practice to write prescriptions in return for sums of money ranging from $200 to $1,000 for each prescription written; to accept payment of $300 to $600 for writing prescriptions for someone who says he is selling some of the pills obtained; to give a patient an option as to what name a prescription for a powerful pain killer should be written in; to write prescriptions for powerful pain killers without ever seeing the patient, examining him, or verifying that he was in fact ill; or to write prescriptions at service stations, in a van, or in restrooms.
 
 
 23
 From this court's review of the discussion between the trial judge and defense counsel, it is clear that the trial judge believed that the jury was absolutely correct in their verdict and that defendant has no chance of reversal on appeal. Although stating this several times in several different ways, and stating that he did not believe expert testimony was necessary in this case, given all of the lay testimony, the judge ultimately concluded that he should give defendant "the benefit of the doubt." That is not the standard set forth in 18 U.S.C. Sec. 3143(b) and in United States v. Pollard, We cannot give defendant the benefit of the doubt, but must require that the appeal of his conviction present a "close question or one that could go either way." We cannot find, under the facts of the present case, that the issue of expert testimony as to what constitutes a legitimate medical purpose in the usual course of professional practice is a close question or one that could go either way. We note, however, that our decision does not foreclose further review of this issue by this court when defendant presents it in the appeal of his conviction.
 
 
 24
 Accordingly, the decision of the district court releasing defendant on bond pending appeal is REVERSED and the case REMANDED to the district court for the completion of procedures necessary to cancel defendant's bond and secure his detention.