931 F.2d 56
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David HILL, David W. Norman, Mark H. Ruff, Ferrell D.
Clements, Defendants-Appellants.
 Nos. 89-5952 to 89-5954 and 89-5957.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1991.
 
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, EDWARDS, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 Ferrell D. Clements, Mark H. Ruff, David Hill, and David W. Norman, appeal their convictions and sentences for conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. Sec. 841.
 Clements argues that the district court erred (1) in failing to properly advise him in accordance with Fed.R.Evid. 11 of the maximum sentence he could receive; (2) in considering conduct that he claims was not relevant pursuant to U.S.S.G. Sec. 1B1.3; (3) in applying the Sentencing Guidelines where his participation in the conspiracy straddles the effective date of the guidelines, in violation of the Ex Post Facto Clause of the Constitution; and (4) in relying upon the presentence report to determine the amount of drugs to be attributed to his participation in the conspiracy.
 Ruff claims that the district court erred (1) in departing upward and declining to depart downward from the Sentencing Guidelines pursuant to U.S.S.G. Secs. 3B1.1 and 5K2, respectively, and (2) in using a preponderance of evidence standard, in making factual determinations at sentencing, in violation of the Due Process Clause of the Constitution.
 Hill argues that (1) the district court abused its discretion in admitting a photograph which prejudiced his cause; (2) the United States magistrate exceeded his authority in accepting the jury verdict; and (3) the district court improperly applied the guidelines to his case because (a) a preponderance of the evidence standard was employed in assessing facts included in the presentence report, (b) his sentence was not comparable to others similarly situated, and (c) his base offense level should not have been adjusted upward for obstruction of justice and should have been adjusted downward for minor participation.
 
 
 1
 Finally, Norman contends (1) that there was insufficient evidence to convict him; (2) that the court improperly allowed opinion testimony regarding the purpose of a meeting; (3) that testimony was erroneously admitted concerning other crimes or acts; (4) that his base offense level was incorrectly determined; and (5) that the district court should have departed downward for his minor participation.
 
 BACKGROUND
 
 2
 In 1986, defendants Clements and Ruff began supplying Frank Santiago[1] with methamphetamine for distribution. Santiago eventually stored the substance at his residence pursuant to Ruff's request. Ruff had mentioned to Santiago that his father-in-law, Clements, supplied the drug to Ruff and that he had seen his father-in-law's drug lab. From January 1987 until the summer of 1987, Santiago obtained methamphetamine, in one-ounce quantities, from Ruff. In the summer of 1987, Santiago met David Wayne Norman who became crucial to setting up ties for drug distributions. Norman received $50 for each ounce distributed through people he introduced to his coconspirators. Hence, a drug distribution network evolved in which Ruff's father-in-law, Clements, manufactured the drug. Ruff, in turn, distributed it to Santiago, who sold the drug to Craig Van Riper[2] who in turn, with Norman's assistance, sold it to small distributors. During an eleven-month period, this network distributed about sixty pounds of methamphetamine.
 
 
 3
 In February 1988, defendant Hill met Craig Van Riper. Van Riper began distributing the drugs to Hill who received approximately seventeen pounds of methamphetamine throughout the course of the conspiracy. As Van Riper, Hill, and Norman developed the distribution network in Georgia, Clements moved his laboratory from California to Arkansas. In November 1988, Arkansas state police seized lab equipment and chemicals.
 
 ANALYSIS
 
 4
 Counsel for Clements says in his brief that "it appears" that his client was unaware of the maximum sentence he could receive. Because the record reveals that the district court advised Clements that the maximum penalty he faced was twenty years' imprisonment, a $1,000,000 fine, and at least three years of supervised release, that concern is not well-founded.
 
 
 5
 Clements next contends that the district court improperly relied upon the presentence report to determine the amount of drugs attributable to him. However, because Clements did not specifically object to the quantity of drugs mentioned in the presentence report--even after the district judge asked whether he quarreled with that calculation--the court was entitled to rely upon the presentence report at the time of sentencing. United States v. Fry, 831 F.2d 664, 668 (6th Cir.1987). Moreover, Clements does not point out on appeal how the calculation of the amount was inaccurate.
 
 
 6
 Clements also complains that the chemicals retrieved from the lab in Arkansas are not relevant to his case. Section 1B1.3 of the Sentencing Guidelines states:
 
 
 7
 Sec. 1B1.3 Relevant Conduct (Factors that Determine the Guideline Range
 
 
 8
 (a) Chapters Two (Offense Conduct) and Three (Adjustments)....
 
 
 9
 (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense....
 
 The commentary further explains:
 
 10
 In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant....
 
 
 11
 U.S.S.G. Sec. 1B1.3, comment. (n. 1).
 
 
 12
 Therefore, the court was entitled to rely on that evidence, since the lab was moved during the time frame of the conspiracy and since "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" are to be considered by the court. U.S.S.G. Sec. 1B1.3(a)(2).
 
 
 13
 Finally, Clements argues that the Ex Post Facto Clause of the Constitution is violated when the guidelines are applied to conspiracies that began prior to the effective date of the guidelines and ended after that date. This issue has been resolved by the opinion of this court in United States v. Ykema, 887 F.2d 697, 700 (6th Cir.1989), cert. denied, 110 S.Ct. 878 (1990), which held that application of the guidelines to straddle crimes does not violate the Constitution.
 
 
 14
 Defendant Ruff first maintains that the district court erroneously found that he was an organizer and, accordingly, enhanced his sentence pursuant to section 3B1.1.[3] He also argues that he and Santiago carried out the same task, but he improperly received an upward departure while Santiago did not. Whether a defendant is " 'an organizer, leader, manager, or supervisor' is a question of fact reviewable 'under the clearly erroneous standard, giving due regard to the trial court's assessment of the credibility of the witnesses.' " United States v. Barrett, 890 F.2d 855, 867 (6th Cir.1989) (quoting United States v. Barreto, 871 F.2d 511, 512) (5th Cir.1989)). Contrary to Ruff's contention, questions of fact upon which a court should rely in determining sentence may be resolved by a preponderance of the evidence. United States v. Carrol, 893 F.2d 1502, 1506 (6th Cir.1990).
 
 
 15
 Because the facts reveal that Santiago, unlike Ruff, cooperated with the government and the two played different rolls in the offense, Ruff's attempted comparison of himself with Santiago is unjustified. More importantly, the record supports the court's finding with respect to Ruff's supervisory role.
 
 
 16
 Ruff's next assignment of error is that the court erroneously refused to depart downward pursuant to section 5K.2.0[4] of the guidelines because of alleged psychological coercion by his father-in-law. That issue has been resolved in this circuit by United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989), where we stated:
 
 
 17
 A sentence which is within the Guidelines, and otherwise valid, as is the case here, is not appealable on the grounds that the sentencing judge failed to depart from the Guidelines on account of certain factors which the defendant feels were not considered by the Guidelines and should reduce his sentence....
 
 
 18
 The Fourth Circuit in United States v. Bayerle, 898 F.2d 28 (4th Cir.), cert. denied, 111 S.Ct. 65 (1990), held that an exception exists where the judge erroneously believed he did not have the authority to depart downward. Bayerle, 898 F.2d at 31. That is not precisely what happened here. The district judge, in declining the downward departure observed that: "No, I don't think this is a case, that's what I am saying. I don't think, even if it were authorized, the Court doesn't think, based upon the extensive amount of drugs and the length of time that this, that this occurred, that departure is warranted on that basis."
 
 
 19
 Defendant Hill complains that the trial court erred in admitting a photograph showing him with long hair and a beard when there was no identification issue and the only intended purpose was to prejudice the jury. The proper standard of review of this evidentiary issue is an abuse of discretion. United States v. Phillips, 888 F.2d 38, 40 (6th Cir.1989).
 
 
 20
 The photograph was relevant to supporting the description of Hill as described by certain witnesses, since defendant appeared in the courtroom with short hair and no beard. It is difficult to comprehend how Hill's prior appearance may have prejudiced his cause, however, if there was any prejudice, it cannot be said to have substantially outweighed the relevance of the evidence.
 
 
 21
 Hill's next argument, that it was error for a magistrate to receive the jury verdict, has been resolved against him by this court's opinion in United States v. Sawyers, 902 F.2d 1217, 1220 (6th Cir.1990). He further complains that the district court made three errors in its application of the Sentencing Guidelines to his case. The first of these involves the quantity of drugs attributed to him. That argument is not well-taken in view of the fact that the trial judge resolved facts against him, by using a preponderance of the evidence standard, in conformity with Carroll, 893 F.2d at 1506.
 
 
 22
 He also suggests that application of the guidelines, in his case, violates the Eight Amendment to the Constitution because his sentence did not parallel those meted out to others involved in the case. Those defendants received a downward departure for cooperating with the government pursuant to U.S.S.G. Sec. 5K1.1,[5] while Hill did not cooperate.
 
 
 23
 Hill's next assignment of error is that his base level should not have been adjusted upward for obstruction of justice pursuant to U.S.S.G. Sec. 3C1.1.[6] Hill committed perjury when he testified during a detention hearing that he had never dealt drugs and that he had only been arrested for a traffic violation. Under these circumstances, the departure was warranted. United States v. Acosta-Cazares, 878 F.2d 945, 953 (6th Cir.), cert. denied, 110 S.Ct. 255 (1989).
 
 
 24
 Finally, Hill argues that the court erred in not departing downward as the result of his "minor participation" in the crime, pursuant to section 3B1.2 of the guidelines. The commentary to that section explains that section 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. Sec. 3B1.2, comment. (backg'd.)
 
 
 25
 In the present case, defendant actively distributed over sixteen pounds of methamphetamine. The court found "that as a retailer, if you will, [defendant] was more caught up in the Van Riper network and was not by any means anything but a major player." The district court's evaluation is consistent with the Fifth Circuit's analysis in United States v. Buenrostro, 868 F.2d 135, 138 (5th Cir.1989), cert. denied, 110 S.Ct. 1957 (1990), where the court determined that couriers are an indispensable part of drug distribution networks. The district court's factual findings regarding Hill's sentence are not clearly erroneous.
 
 
 26
 Although defendant Norman complains that there was insufficient evidence to convict him, he failed to renew his motion for acquittal at the close of all the proof. Therefore, he waived any objection to the denial of his earlier motion for acquittal made at the close of the government's case-in-chief. United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984).
 
 
 27
 Norman also argues that the trial court committed reversible error when it permitted witnesses to testify concerning their understanding of the purpose of meetings set up by Norman, as the witnesses were giving their opinions of his state of mind. However, this is not a case, as defendant suggests, that involves testimony as to the defendant's state of mind by others. See DeLoach v. United States, 307 F.2d 653, 655 (D.C.Cir.1962). (The court held that "conclusions or interpretations of a witness as to the meaning of what someone said is not admissible.") In this case, each witness testified as to his own state of mind. Furthermore, lay opinion testimony concerning a defendant's state of mind is admissible under some circumstances. See Fed.R.Evid. 701; United States v. Graham, 856 F.2d 756, 759 (6th Cir.1988), cert. denied, 489 U.S. 1022 (1989) (holding that a witness can testify, in the form of an opinion, as to his understanding of what a defendant intended when he made certain statements).
 
 
 28
 Defendant Norman next complains that the judge abused his discretion by admitting the testimony of Debbie Bennett. Bennett testified that, during the course of the conspiracy, she visited Norman at his motorcycle shop to borrow a type of drug scale frequently used to weigh quantities of drugs for repackaging. While there, she observed Norman using the scales to weigh cocaine. Since the present case does not deal with the distribution of cocaine, Norman argues that the testimony was irrelevant and highly prejudicial. The district court found that the evidence was
 
 
 29
 probative of motive and opportunity and intent and the other matters which are listed under Rule 404(b).
 
 
 30
 It's true that it is a different drug, but it's the same kind of activity which he's accused of here, and it shows that he had certainly the opportunity to, if he had the opportunity to repackage and distribute cocaine, then he had the opportunity to repackage and distribute methamphetamine.
 
 
 31
 According to an earlier opinion of this court:
 
 
 32
 If evidence falls within one of the exceptions of 404(b), a district court may admit the evidence if the evidence's probative value outweighs its prejudicial impact. This Court reviews a district judge's balancing of prejudicial impact and probative value under Fed.R.Evid. 403 in a Fed.R.Evid. 404(b) context under an abuse of discretion standard. In reviewing a district court's ruling on a Fed.R.Evid. 403 objection, this Court "look[s] at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." Furthermore, a district court should exclude evidence under Fed.R.Evid. 403 "only where the probative value of the relevant evidence is substantial ly outweighed by the danger of unfair prejudice."
 
 
 33
 United States v. Pollard, 778 F.2d 1177, 1179 (6th Cir.1985) (emphasis in original) (citations omitted). See also United States v. Robison, 904 F.2d 365, 368 (6th Cir.), cert. denied, 111 S.Ct. 360 (1990) (where this court affirmed the district court's decision to admit evidence of prior drug dealing to show defendant's intent to distribute rather than merely use). In the present case, the evidence was probative of opportunity, intent and knowledge. Defendant has not demonstrated that the danger of unfair prejudice substantially outweighed the probative value of the evidence.
 
 
 34
 Norman also complains that the district court erred in assessing the quantity of drugs attributable to him during sentencing. The court based defendant's initial offense level on the amount of drugs sold by dealers he brought into the organization and for which he received a commission. Defendant argues that the testimony regarding the amount of compensation he received in exchange for producing buyers is not credible and should not be utilized in determining his base offense level. However, since no drugs were seized, the trial court was warranted in examining other factors, such as the amount of money exchanged, in order to approximate the quantity of drugs involved. See U.S.S.G. Sec. 2D1.4, comment (n. 2).[7] The district court could have established defendant's base level based upon all the drugs distributed by those who became distributors as a result of Norman bringing them into the organization. See U.S.S.G. Sec. 1B1.3, comment (n. 1).[8] Consequently, defendant's base offense level is conservative and proper.
 
 
 35
 Finally, Norman claims that the court's decision not to depart downward for his "minimal participation" pursuant to U.S.S.G. Sec. 3B1.2, is erroneous. In view of earlier discussion in this opinion concerning appeals from refusals to depart, and our being unable to say the guidelines were in this instance applied to Norman in violation of law, the argument is not well-taken.
 
 
 36
 For the reasons stated, the judgments of conviction and sentences are affirmed.
 
 
 
 [1]
 Santiago was not indicted in this case because he had previously been convicted for his participation in the conspiracy
 
 
 [2]
 Craig Van Riper was also indicated in a prior case. Therefore, he was not a named defendant in this case
 
 
 [3]
 Sec. 3B1.1. provides:
 Aggravating Role.
 Based on the defendant's role in the offense, increase the offense level as follows:
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
 
 
 [4]
 Under section 5K.2.0, the court may depart if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," the court may impose an alternate sentence
 5 U.S.S.G. Sec. 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines. (a) The appropriate reduction shall be determined by the court...."
 6 U.S.S.G. Sec. 3C1.1 states that "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of instant offense, increase the offense level by 2 levels."
 7 U.S.S.G. Sec. 2D1.4, comment (n. 2) provides:
 Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.
 8 U.S.S.G. Sec. 1B1.3, comment (n. 1) provides that a defendant is accountable for conduct that he "counseled, commanded, induced, procured, or willfully caused" during the commission of the offense of conviction.