23 F.3d 409
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth HIGH, Defendant-Appellant.
 No. 93-1025.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1994.
 
 Before: KENNEDY, MILBURN and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Kenneth High appeals his jury convictions for conspiracy to distribute and possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. Sec. 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). On appeal, defendant seeks a new trial on the ground that (1) the District Court erred by admitting into evidence a gun seized from defendant's residence because the gun was unrelated to the crime charged and was prejudicial, and (2) the District Court erred by admitting the testimony of a co-conspirator about a drug transaction occurring before the period of the charged conspiracy. For the reasons stated below, we affirm.
 
 I.
 
 2
 This case concerns a drug distribution conspiracy by which marijuana and cocaine were transported by air and road from Houston, Texas, to Detroit, Michigan, for local distribution. The period of the conspiracy, as charged in the indictment, was from about June of 1987, to March, 1991.
 
 
 3
 On July 2, 1991, defendant and thirteen others were indicted by a grand jury in the Eastern District of Michigan. Defendant and others were charged with conspiracy to distribute and to possess with intent to distribute marijuana and cocaine. Defendant was also charged with possession with intent to distribute cocaine. Several defendants pled guilty and others proceeded to trial. Defendant was tried separately.
 
 
 4
 The government's principal witness was Darryl Thomas, a leader of the conspiracy who pled guilty to running a continuing criminal enterprise and agreed to cooperate with the government. Thomas, originally from Detroit, went to Houston, Texas, in early 1987 where he met with Leroy Johnson, a friend of his who is also from Detroit. Thomas began obtaining cocaine and marijuana through Johnson's Texas connections, which he transported to the Detroit area for further distribution. He also got others involved in transporting the drugs.
 
 
 5
 Thomas testified that from June, 1987, until the middle of 1989, he delivered several shipments to defendant in Detroit, who in turn distributed the drugs through a chain of crack houses under defendant's control. Thomas made deliveries to defendant in Detroit at residences on Indiana Street and Grandville Avenue, and at a location on Woodingham. Thomas estimated that during this latter period he shipped approximately 300 kilograms of cocaine to defendant. On two occasions, Thomas delivered two kilograms of cocaine to defendant at defendant's retail establishment in Detroit. Defendant told Thomas on a couple of occasions that he intended to break the quantities down for resale. Thomas would contact defendant from Houston, using beepers and telephones, to inform defendant when shipments would be delivered to Detroit. The government entered into evidence telephone records showing numerous calls between Houston numbers under Thomas' control and Detroit numbers under defendant's control. Thomas testified that six or seven times during the period of the conspiracy, defendant came to pick up cocaine from a "distribution center" on Greenfield Road in Detroit, which was the apartment of co-conspirator Donna Woods. Thomas also testified that he gave a rifle to defendant in 1987 or 1988 which he saw at defendant's residence on another occasion.
 
 
 6
 Co-conspirator Donna Woods testified to her participation in the conspiracy and her experience with defendant. She acted as a courier for Thomas, bringing drug shipments from Houston to Detroit. She also made flight arrangements for other couriers who transported cocaine between Houston and Detroit. She brought large quantities to her Greenfield Road apartment, which were picked up by various individuals including Thomas, a man named William Sabra, and the defendant. Defendant picked up cocaine on at least three occasions. Defendant also picked up drugs from an apartment that Woods rented in Southfield, Michigan. She twice picked up money from defendant's store.
 
 
 7
 Brian Halton, an agent for the Drug Enforcement Administration (DEA) testified about a search he participated in of defendant's residence on Grandville Avenue on July 16, 1991. The officers seized a loaded rifle and a double clip. They also discovered an envelope on which was handwritten "Kenny" and "papers for the house," as well as three Texas phone numbers including Thomas' beeper number and the phone number to a location on West Bellfort Street in Houston. Thomas had testified that he shipped drugs from the West Bellfort location. Officers found no drugs or drug paraphernalia at defendant's Grandville residence. Halton also testified that Leroy Johnson agreed to cooperate with the agents and that Johnson taped a conversation between Johnson and defendant.
 
 
 8
 Co-conspirator Leroy Johnson testified to his involvement in the conspiracy. He confirmed that he shipped cocaine from Houston to Detroit and that Thomas was his connection to the Detroit area. He met with Thomas and other individuals involved with Thomas' drug dealings including defendant. Johnson and Thomas went to defendant's residence where Thomas and defendant conducted business upstairs while Johnson waited downstairs. Johnson also stated that he collected money from defendant and that on one occasion, Thomas went to defendant's residence on Kentucky Street and returned with one kilogram of cocaine. In cooperation with DEA agents, Johnson tape recorded a conversation he had with defendant in January of 1991. DEA agents also videotaped a meeting between Johnson and other co-conspirators in February, 1991.
 
 
 9
 The government entered the video tape into evidence. It portrayed a meeting at a Southfield, Michigan hotel between Johnson, cooperating with the government, and co-conspirators Andrew Sawyer and Frank Bufkin. The purpose of the meeting was to discuss the sale of cocaine. During the course of the meeting, Bufkin said that he had spoken with another co-conspirator named Benjamin Giles who told Bufkin that defendant had warned Giles to beware of associates of Thomas because Thomas had been "snitching." Joint App. at 161. Bufkin also said that defendant warned that if he talked to Johnson, he should have Johnson take off his shirt to make sure he isn't wired. At that point, as the video tape showed, Johnson pulled up his shirt to show Sawyer and Bufkin that he was not wired. Bufkin went on to say that defendant was still dealing cocaine and that defendant had offered to sell cocaine to Bufkin. Other points of the conversation concerning defendant included Bufkin's and Sawyer's opinion that defendant often cut his cocaine with impurities and that defendant would be unwilling to deal directly with Johnson.
 
 
 10
 Sawyer also testified on behalf of the government. Sawyer had known defendant for over fifteen years and had also known Thomas for a considerable period. He said he knew that Thomas and defendant were involved together in drug trafficking. On more than one occasion, Thomas brought a large suitcase to Sawyer's house and defendant arrived shortly thereafter. On one such occasion, Sawyer observed two packages of what he believed to be drugs and that, after defendant left, the packages were gone. Sawyer also testified, over defendant's objection, that in 1985, prior to the charged conspiracy, Sawyer had obtained ten rocks of crack cocaine from defendant for the purpose of resale.
 
 
 11
 Defendant presented no evidence at trial. The jury found defendant guilty of conspiracy to distribute and possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. Sec. 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). The District Court sentenced defendant to 300 months on each count, to run concurrently. Defendant filed this timely appeal.
 
 II.
 
 12
 Defendant's first ground for a new trial is that the District Court erred by permitting the government to introduce into evidence an assault rifle seized from defendant's Grandville residence. During trial, outside the presence of the jury, the government notified the court of its intention to offer into evidence an assault rifle that was seized from defendant's Grandville residence on July 16, 1991. After hearing brief arguments from counsel, the court reserved ruling and requested that the parties brief the issue. The government submitted a memorandum in support of the rifle's admissibility but the defendant submitted nothing.
 
 
 13
 The next morning, the court again heard arguments on the issue. The government's position, as stated in its memorandum and in court the previous afternoon, was that the gun was admissible on two grounds: first, in a prosecution for drug trafficking, a gun is admissible as "a tool of the trade"; second, the gun corroborates Thomas' testimony that he had given defendant an assault rifle in late 1987 or 1988 which, Thomas testified, he had seen at defendant's Grandville residence on a later occasion. Joint App. at 119-21, 187-88. Defense counsel objected to the gun's admissibility on the ground that the government had failed to show any link between the seized gun and drug trafficking; the defendant was not charged with using a gun; there were no drugs, drug proceeds, or drug paraphernalia found during the search; Thomas had not identified the gun; the serial number was not erased; and there was no evidence that defendant used a gun during any drug transactions. Thus, defense counsel argued, the gun was unrelated to the crime charged and would only serve to inflame the jury and should therefore be excluded under Fed.R.Evid. 403. Joint App. at 119-21, 135-36. Defendant also contends on appeal that the court was misled when ruling on the admissibility of the gun because the government misrepresented Thomas' testimony. The District Court ruled, citing the government's memorandum, that the gun was clearly admissible and that it was more probative than prejudicial. Joint App. at 135-36.
 
 
 14
 Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Evid. 403. This Court reviews Rule 403 evidentiary rulings under an abuse of discretion standard. United States v. Ingrao, 844 F.2d 314, 316 (6th Cir.1988). "In reviewing a district court's ruling on a Fed.R.Evid. 403 objection, this Court 'look[s] at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.' " United States v. Pollard, 778 F.2d 1177, 1179 (6th Cir.1985) (quoting United States v. Holloway, 740 F.2d 1373, 1378 (6th Cir.), cert. denied, 469 U.S. 1021 (1984)). "Furthermore, a district court should exclude evidence under Fed.R.Evid. 403 'only where the probative value of the relevant evidence is substantially outweighed by the danger of unfair prejudice.' " Pollard, 778 F.2d at 1179 (quoting United States v. Hans, 684 F.2d 343, 346 (6th Cir.1982) (emphasis in original)).
 
 
 15
 Turning to this case, we cannot conclude that the District Court abused its discretion by admitting the gun into evidence. The rifle was probative, as Circuit precedent holds, of drug trafficking. See, e.g., United States v. Arnott, 704 F.2d 322, 325-26 (6th Cir.), cert. denied, 464 U.S. 948 (1983); United States v. Marino, 658 F.2d 1120, 1123 (6th Cir.1981). The gun's connection to drug trafficking is supported by Thomas' testimony that he exchanged money with defendant at the Grandville residence, where the gun was discovered, on three occasions and that Thomas delivered cocaine to defendant there on two or three occasions.
 
 
 16
 Nor do we agree with defendant's contention on appeal that the trial court's ruling was based on false information. Defendant asserts that the government's sole ground for offering the gun was that it corroborated Thomas' testimony. In fact, the government stated in court and in its memorandum two grounds for the gun's admissibility: the evidence corroborated Thomas' testimony and the gun was a tool of drug trafficking. Joint App. at 119-21, 135-36. Furthermore, the court was not misled with respect to Thomas' testimony. The government did state, erroneously, that Thomas testified to giving defendant an "assault" rifle. However, defendant pointed out, and the court acknowledged, that Thomas had not been asked to identify the seized gun. Joint App. at 120-21. Also, when the court asked the government why Thomas had not been asked to identify the rifle, the government responded that "there's no way he [Thomas] could say that was the gun." Joint App. at 121. Thus the court was aware that the gun seized had not been identified as the same gun Thomas testified about. Finally, to the extent that the government mischaracterized Thomas' testimony, the defendant had three chances, twice in open court and once by written brief, to state that specific objection, as required by Fed.R.Evid. 103(a)(1). We conclude that the trial court did not abuse its discretion by admitting the gun seized from defendant's Grandville residence.
 
 III.
 
 17
 Defendant next objects to the District Court's admission of co-conspirator Andrew Sawyer's testimony that he bought ten rocks of cocaine from defendant back in 1985. Defendant argues that the testimony was prejudicial bad-character evidence under Fed.R.Evid. 404(b) and should have been excluded.
 
 
 18
 Andrew Sawyer testified about two occasions when Darryl Thomas and the defendant conducted drug transactions at Sawyer's house. On one occasion, Thomas arrived at Sawyer's house with a suitcase and told him that defendant was going to meet Thomas there. Joint App. at 175. Thomas asked Sawyer to leave the room when the defendant arrived. Joint App. at 175. Sawyer testified that he understood Thomas' request because he knew Thomas did not want him in the room when he was conducting drug business. Id. Defendant arrived at the house, Sawyer let him in, and they proceeded upstairs. Joint App. at 176. Sawyer said he knew defendant was in the drug business.
 
 
 19
 At this point, the government asked Sawyer if he ever had any prior drug dealings with defendant. Joint App. at 176. Sawyer said that he did once in 1985. Joint App. at 177. Defense counsel objected on the ground that the prior transaction was outside the scope of the conspiracy. Pursuant to its earlier ruling on the issue, the court admitted the testimony. Sawyer testified that in 1985, he asked defendant if he had any drugs for Sawyer to sell. Defendant did and sent someone, whose name Sawyer could not recall, with ten rocks of cocaine to give to Sawyer. Instead of selling the cocaine, however, Sawyer smoked it and told defendant that someone had robbed him. Joint App. at 178.
 
 
 20
 The court had earlier addressed the admissibility of Sawyer's testimony regarding his 1985 drug transaction with defendant. The court first ruled that the testimony was admissible under Rule 404(b) as evidence of defendant's intent or absence of mistake or accident. Joint App. 172. The court then considered whether the evidence was more prejudicial than probative and concluded it was not. The court stated that Sawyer's testimony, "as pointed out by the counsel for the government, has to do with the same individuals who are alleged to be in the same conspiracy, and I believe that the probative value outweighs any unfair prejudice." Joint App. at 172.
 
 
 21
 Rule 404(b) excludes evidence of other crimes to show criminal propensity. Fed.R.Evid. 404(b); United States v. Blakeney, 942 F.2d 1001, 1018 (6th Cir.), cert. denied, 112 S.Ct. 646 (1991), and cert. denied, 112 S.Ct. 881 (1992). However,
 
 
 22
 evidence of uncharged criminal activity is not considered "other crimes" evidence under Fed.R.Evid. 404(b) if it "arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial."
 
 
 23
 United States v. Towne, 870 F.2d 880, 886 (2d Cir.), cert. denied, 490 U.S. 1101 (1989) (quoting United States v. Weeks, 716 F.2d 830, 832 (11th Cir.1983) (citations omitted)).
 
 
 24
 We conclude that Sawyer's testimony about the earlier transaction does not fall under Rule 404(b) because it was intrinsic to the crime on trial. Sawyer testified that Thomas and defendant met at Sawyer's house to conduct drug business. The question arises why defendant would trust Sawyer enough to conduct illegal drug transactions at his house. Indeed, the video tape evidence indicates defendant's suspicion of others; there, Johnson lifted his shirt for Bufkin and Sawyer because Bufkin said that defendant warned him not to trust Johnson. The fact that defendant had known Sawyer a long time does not wholly explain defendant's willingness to conduct drug transactions in Sawyer's house. Sawyer's earlier drug dealing with defendant, however, better explains the nature of their relationship and the incident at Sawyer's house, which occurred during the conspiracy. As such it was not an-"other" crime but a part of the story at hand. See United States v. Kalaydjian, 784 F.2d 53, 56 n. 3 (2d Cir.1986) (holding that evidence of prior meeting between defendant and witness, that took place outside charged conspiracy, to discuss sale of heroin was not other-crimes evidence because it established trust relationship between defendant and witness). We conclude, therefore, that the trial court did not abuse its discretion by admitting Sawyer's testimony.
 
 IV.
 
 25
 For the foregoing reasons, defendant's convictions are AFFIRMED.